# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

HEATHER TREDICK

VERSUS

BAZUNU D. EKUGBERE, ET AL.

CIVIL ACTION

NO. 17-103-JWD-RLB

## RULING AND ORDER

This matter comes before the Court on *Defendants' Motion for Summary Judgment* (Doc. 18) filed by Bazunu D. Ekugbere and Farm Bureau General Insurance Company of Michigan ("Farm Bureau") (collectively, "Defendants") and on the *Plaintiff's Motion for Summary Judgment* (Doc. 19) filed by Plaintiff Heather Tredick. Both parties have filed oppositions. (Docs. 24, 23.) Neither party has filed a reply. Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, both cross-motions are denied.

**I.** **Factual Background**

The instant case arises out of an accident on January 24, 2016, that occurred on southbound I-59 in St. Tammany Parish, Louisiana between a 1995 GMC Sierra owned and operated by Frederick McCurnin and a 2004 Pontiac Grand Prix operated by Ekugbere. (Docs. 18-2 & 24-1 ¶ 1.) Tredick was the passenger in McCurnin's vehicle at the time of the accident. (Docs. 18-2 & 24-1 ¶ 2.)

Plaintiff testified that she was traveling on I-59 with her boyfriend when they got into an argument. (Doc. 24-2 at 3.) Plaintiff told the boyfriend she wanted to get out of the car, so he let

her out. (*Id.* at 4.) Plaintiff testified that there was no physical contact between the two of them and that he did not attack her. (*Id.* at 5.) She also had no pain or injuries at that time. (*Id.* at 6.)[1]

After she got out of the car, she started walking, without shoes and with no particular plan. (*Id.* at 5.) About five minutes later, McCurnin pulled his vehicle over. (Doc. 24-2 at 6–7, 9.) Plaintiff testified that it was freezing outside and that she was crying because of the fight. (*Id.* at 9.) She asked McCurnin to take her to the next exit so she could "figure something out." (*Id.*) They were stopped on the side of the road for "maybe five minutes, if that." (*Id.* at 10.) They were on the right shoulder of the two-lane I-59. (*Id.* at 9, 11.)

Plaintiff testified that, "when he pulled out -- like we were going, and he goes to merge out [into the right lane], and that's when he got hit" by Ekugbere's vehicle. (*Id.* at 9–11; Docs. 18-2 & 24-1 ¶ 8.) Plaintiff said McCurnin was over the line between the right lane and the shoulder, but more in the right lane. (Doc. 24-2 at 11.) McCurnin had a blinker on and was going about thirty miles per hour. (*Id.* at 11–12.)

Plaintiff further stated that, as soon as the car stopped, she got out to check to see if anyone was hurt. (Doc. 18-3 at 16.) She saw the other car in the median and intended to help its occupants to see if they were all right. (*Id.*) She was about to step into the right lane from the shoulder when she saw two cars coming. (Doc. 24-2. at 13.) She stepped back on the shoulder, and, as a silver car went by "fast", debris from the center of the highway hit her, causing significant injuries. (*Id.* at 13–14; Docs. 18-2 & 24-1 ¶ 12.) Plaintiff said the silver car and the black car following it were going fast, and there was no way for those cars to slow down because they were the first ones behind McCurnin. (Doc. 24-2 at 15.) Plaintiff said she got out of the

---

[1] Defendants also point to the fact that Plaintiff testified that she had snorted heroin that night and that she was addicted to heroin at the time. Plaintiff objects to this evidence as irrelevant to the instant motion. The Court agrees. Such credibility determinations are inappropriate at the summary judgment stage.

car, started walking toward the other driver, got almost to the right lane, saw cars coming, and then took a step back. (*Id.* at 15.) Plaintiff testified that the whole thing "didn't take a long time" and was "[p]robably a minute." (*Id.* at 15–16.)

Plaintiff could not describe what the debris was, what color it was, or how big it was, but she said "there was a lot of debris on the road from the accident. . . . [I]t came from the accident. I mean there was a lot of debris on the road . . . from the accident. . . . it wasn't just one piece of metal. Like there was debris all over the road from the car accident." (*Id.* at 17.) She continued: "I don't know. I mean it could have been from his vehicle or the other one, but there was a bunch of debris on the road." (*Id.* at 17–18.) She agreed that "the debris that hit [her] was from debris that was in the left lane that the silver car hit." (*Id.*) Plaintiff was facing the median when she was struck. (*Id.* at 18.)

Plaintiff stated that the debris "knocked [her] out. I just think from the pain is what I think it did, because I don't -- it is just all of the sudden [sic] I opened my eyes and there was like -- there was a bunch of people around me that weren't, you know -- they were just pedestrians, you know." (Doc. 24-2 at 19.) She said that she "couldn't move" and "had to stay still." (*Id.*) She was told at the hospital that she was bleeding and that she was "split" from the back of her arm, around the elbow. (*Id.* at 19–20.) "[M]y entire elbow came through my arm," and she had "two little dots from the screws from the piece of metal" that "left an indentation" on her "abdomen" which she still had at the time of the deposition. (*Id.* at 20–21.) The EMT people loaded her onto the helicopter. (*Id.* at 21.) Plaintiff also claimed injuries to her ribs from the debris. (Doc. 18-3 at 7.) She said that all of them were broken on both sides and that the pain from this lasted a month. (Docs. 18-3 at 7; 19-3 at 15, 20.) Plaintiff had two surgeries at the

3

hospital—the first for her arm, and then another two days later. (Doc. 19-2 at 19.) Plaintiff also had a lacerated liver, which the doctors said would heal on its own. (*Id.*)

McCurnin provided a conflicting account of how Plaintiff sustained her injuries. McCurnin testified that, when he picked Plaintiff up, she told him she was beaten up by two or three guys in a vehicle. (Doc. 24-3 at 9–10; 18-4 at 15.) According to McCurnin, these men had thrown her out of the car. (Doc. 24-3 at 10.) McCurnin said Plaintiff gave no other specifics about those events. (*Id.*)

When McCurnin picked Plaintiff up, "she was bent over, stumbling forward, with both arms covering the stomach area, chest area." (Doc. 18-4 at 11; *see id* at 17.) McCurnin remembered her saying she had pain in her arm and ribs. (*Id.* at 19.) McCurnin's intention was to "pick her up" and "drop her off someplace where she could call for assistance." (*Id.* at 15.) He later said he was going to bring her to the hospital. (*Id.* at 23.)

McCurnin said he did not recall ever seeing any kind of debris or object strike Plaintiff. (*Id.* at 10.) McCurnin stated that, after the accident, she got out of the car, started walking north, and then laid in the grass. (*Id.* at 14.) He said he saw no bleeding coming from her body, and she was conscious and alert. (Doc. 18-4 at 22.) McCurnin said that he did not know, based on anything she said to him, why a medical transport helicopter was necessary at the accident scene. (*Id.* at 13.)

Plaintiff denied McCurnin's account of what happened. (Doc. 24-2 at 7.)

II. **Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its

opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S. Ct. 1348 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

### III. Discussion

#### A. Defendants' Motion for Summary Judgment

##### 1. Parties' Arguments

Defendants urge in their motion that the central question in this case is legal causation. Defendants assert that this is a question of law to be decided by the Court. Defendants further maintain:

> Tredick was admittedly not injured in [sic] during Accident 1, but afterwards due to the alleged actions of some phantom vehicle when it purportedly struck an unknown piece of debris and sent it flying into plaintiff (Accident 2). Even assuming plaintiff was injured by debris from the roadway, which defendants contest, Defendants contend that plaintiff allegedly being hit by a piece of debris in the roadway by an oncoming vehicle is a superseding event for which defendants are not responsible. Tredick's injury cannot be easily associated with Accident 1

5

and was outside of the scope of Ekugbere's duty of protection, and, therefore, defendants cannot be liable in negligence for Tredick's alleged injuries.

(Doc. 18-1 at 6–7.) Defendants argue that four Louisiana appellate court decisions find that Defendants cannot be liable to Plaintiff under the facts of this case.

Plaintiff responds that legal causation is a question for the jury, not the Court. Plaintiff also contends that the ease of association "is clear" given (1) the "temporal component," as the second accident occurred very shortly after the first accident, (2) the "physical component," as Plaintiff was injured by debris from the first accident, (3) the absence of negligence of the phantom driver, and (4) the questions of fact as to how Plaintiff sustained her injuries. (Doc. 24 at 2–3.) Plaintiff also advances that legal causation is driven by policy considerations, and "Ekugbere's duty of care as a driver to keep a proper look-out certainly encompasses the risk that debris from his accident could cause injury to a person or property (loss of control by another driver, or by striking the debris and catapulting at a person or property)." (Doc. 24 at 4.) Plaintiff closes by arguing that legal causation is made on a case-by-case basis and that the inquiry is so fact-intensive that other cases lack value unless they "bear a striking resemblance to the case to be decided." (Doc. 24 at 4 (citing *Roberts v. Benoit*, 605 So. 2d 1032, 1055 (La. 1991).)

### 2. Analysis

#### a. Negligence in Louisiana Generally

Where jurisdiction is founded on diversity, federal courts must apply the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817 (1938*); James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 69 (5th Cir. 2014) (citing *Westlake Petrochems., L.L.C. v. United Polychem., Inc.*, 688 F.3d 232, 238 n.5 (5th Cir. 2012)). Here, there is no dispute that Louisiana law applies.

Louisiana Civil Code article 2315 provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315. "The duty-risk analysis is the standard negligence analysis employed in determining whether to impose liability under" Article 2315. *Lemann v. Essen Lane Daiquiris, Inc*., 2005-1095 (La. 3/10/06); 923 So.2d 627, 632–33 (citing *Mathieu v. Imperial Toy Corp.*, 94-0952 (La. 11/30/94); 646 So. 2d. 318, 321). Under this analysis, a plaintiff must prove five separate elements:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).

*Id.* at 633 (citing *Fowler v. Roberts*, 556 So. 2d 1, 4 (La. 1989)*, reh'g granted on other grounds and original opinion reinstated as supplemented,* 556 So. 2d at 13 (La. 1990)). "A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability." *Id.* (citing *Mathieu*, 646 So. 2d at 326).

### b. Legal Cause

As to the fourth element, "[t]here is no 'rule' for determining the scope of the duty. Regardless if stated in terms of proximate cause, legal cause, or duty, the scope of the duty inquiry is ultimately a question of policy[.]" *Roberts*, 605 So.2d at 1052. "The essence of the [legal cause] inquiry is whether the risk and harm encountered by the plaintiff fall within the scope of protection of the [duty]." *Id.* at 1054 (quoting *Dixie Drive It Yourself Sys. New Orleans Co. v. Am. Beverage Co.*, 242 La. 471, 137 So. 2d 298, 304 (1962)). "Specifically, the issue in a particular case is whether [a] general duty extends to protect the plaintiff against the particular risk that occurred, in the particular manner in which it occurred. Put differently, does *this* defendant have a duty to protect *this* plaintiff against *this* risk that occurred in *this* manner?" 1-5

7

Frank L. Maraist & Thomas C. Galligan, Jr., *Louisiana Tort Law* § 5.01 (2004 ed., rev. vol. 2016). Louisiana also evaluates legal cause in terms of " 'the ease of association' which melds policy and foreseeability into one inquiry: Is the harm which befell the plaintiff easily associated with the type of conduct engaged in by the defendant?" *Roberts*, 605 So. 2d at 1054 (citation omitted).

According to a recent statement by the Louisiana Supreme Court, "[w]hether this particular [defendant] owed this particular duty to the plaintiff[] in this particular factual context is a mixed question of law and fact." *Parents of Minor Child v. Charlet*, 2013-2879 (La. 4/4/14); 135 So. 3d 1177, 1181 (citing *Kenney v. Cox,* 95–0126 (La. 3/30/95); 652 So. 2d 992 (Dennis, J., concurring) (noting there is a "distinction between the existence of a general duty of care (a legal question) and the 'legal cause' or 'duty/risk' question of the particular duty owed in a particular factual context (a mixed question of law and fact)"); *Pitre v. Louisiana Tech Univ.*, 95–1466, 95–1487 (La. 5/10/96); 673 So. 2d 585, 596 (Lemmon, J., concurring; joined by Kimball, J.) (noting "[i]n the usual case where the duty owed depends upon the circumstances of the particular case, analysis of the defendant's conduct should be done in terms of 'no liability' or 'no breach of duty.' ")).

Thus, contrary to Defendants' position, legal causation is a question for the jury unless reasonable minds could not differ. *See Parents*, 135 So. 3d at 1181 ("the appellate court erred in dismissing plaintiffs' claims with prejudice *as the question of duty/risk should be resolved by the factfinder at trial*," particularly given the existence of material issues of fact. (emphasis added)); *see also Fowler*, 556 So. 2d at 4–5 ("The first element [of the duty-risk analysis] is usually a judge question, and the other four [(which includes legal causation)] are usually jury questions unless reasonable minds could not differ." (citing D. Robertson, W. Powers, Jr. & D. Anderson,

Cases and Materials on Torts 83–84 (1989)); *Chatman v. S. Univ. at New Orleans*, 2015-1179 (La. App. 4 Cir. 7/6/16); 197 So. 3d 366, 375 ("Although for years the issue of whether legal cause was a fact issue or a legal issue 'baffled scholars and courts,' in *Parents of Minor Child v. Charlet*, . . . the Louisiana Supreme Court confirmed that legal cause is a mixed question of law and fact for the jury (or other fact-finder) to decide."); *Nicholson v. Calcasieu Par. Police Jury*, 96-314 (La. App. 3 Cir. 12/11/96); 685 So. 2d 507, 510–11 (noting contrary authority but finding that, under *Fowler*, "Cause-in-fact and legal cause are generally questions for the jury. The exception is when, under the uncontested facts, reasonable minds could not differ." (citing *Fowler,* 556 So. 2d at 4–5)); Maraist & Galligan, *Louisiana Tort Law* § 5.02 ("legal causation is a mixed question of law and fact that the jury decides if reasonable minds could differ. . . . If duty is treated as an issue of law, and legal cause is treated as a mixed question of law and fact, there is a rational allocation of the decision-making function: the judge decides duty and the jury decides legal cause.").

  Here, the Court finds that genuine issues of material fact preclude summary judgment. Even putting aside the conflict between McCurnin's and Plaintiff's accounts, Plaintiff testified that, after Ekugbere at least partly caused an accident with McCurnin, she exited McCurnin's vehicle and, within about a minute, was about to cross the interstate to render aid to Ekugbere when a silver car traveling fast ran over some of the debris from the accident and hurled it into her. The Court concludes that a reasonable jury could find that the Plaintiff's injuries were within the scope of the protection involved. That is, as Plaintiff argues, Ekugbere's duty to drive in a reasonably prudent manner encompasses the risk that, within a minute of an accident caused by the breach of that duty, debris from the wreck could be run over by the first, fast-approaching driver and projected into a victim of that accident who was attempting to render aid. In sum, a

reasonable jury could find that there is an ease of association between Ekugbere's negligent conduct and the harm that befell Plaintiff and that, as a result, these Defendants are liable to this Plaintiff for these injuries occurring in this manner.

### 3. Defendants' Unpersuasive Cases

The Court also rejects Defendants' attempts to analogize to other appellate decisions. As Plaintiffs properly argue: "Every negligence case must be decided on its own facts and circumstances." *Roberts*, 605 So. 2d at 1055 (citing *Foggin v. Gen. Guar. Ins. Co.*, 250 La. 347, 195 So. 2d 636, 640 (1967)). "Because the legal cause analysis is so fact-bound, other legal cause cases serve only as examples of the methodology and can only be analogized from when the facts bear a striking resemblance to the case to be decided." *Id.*

The Court has reviewed the four cases Defendants focus on and find them sufficiently distinguishable so as to preclude summary judgment. For example, in Defendants' allegedly "most analogous" case, *Chanthasalo v. Deshotel*, 17-0521 (La. App. 4 Cir. 12/27/17); 234 So. 3d 1103, plaintiff and defendant were involved in a rear-end collision on I-10 near Kenner. *Id.* at 1105. Following the collision, the two pulled their vehicle onto the shoulder to evaluate property damages and report the accident to the police. *Id.* Roughly five to fifteen minutes thereafter, a third party drove his vehicle into the rear of a fourth person's vehicle. *Id.* The impact of this second accident pushed the fourth person's vehicle onto the shoulder of interstate, causing it to strike both plaintiff and defendant. *Id.* Plaintiff sustained significant injuries from the second accident. *Id.* The trial court granted summary judgment to defendant on the grounds that the first accident was not the legal cause of the second. *Id.* at 1106.

The Fourth Circuit agreed and affirmed, finding that there was "no ease of association between Accident No. 1 and Accident No. 2. The facts [were] uncontested that two separate and

distinct accidents occurred." *Id.* at 1110. The appellate court noted that "five to fifteen minutes lapse between the accidents" and that both parties and their vehicles were on the shoulders at the time of the second accident. *Id.* Plaintiff lacked any evidence that defendant's "actions from Accident No. 1 caused or contributed to the occurrence of Accident No. 2." *Id.* Further, the duty defendant owed to plaintiff from the first accident—"not to follow too closely and drive at a safe speed—did not extend to cover him for the risk of injury from an unrelated second accident. . . . [T]he primary purpose of a motorist's duty to drive at a safe speed and distance is to prevent the type of accident that initially occurred between" the parties." *Id.* Thus, according to the appellate court, defendant's "substandard conduct in causing Accident No. 1 cannot be the legal cause of [plaintiff's] injuries from Accident No. 2." *Id.* As a result, the Fourth Circuit affirmed the granting of summary judgment.

The Court finds *Chanthasalo* distinguishable. First, there is a temporal difference between these cases; in *Chanthasalo*, the accidents occurred "five to fifteen minutes" apart, and, here, the accidents were "[p]robably a minute" apart. (Doc. 24-2 at 15–16.) Second, there is a more direct connection between Ekugbere's conduct and Plaintiff's injuries, as debris from the accident that Ekugbere at least partly caused is, according to Plaintiff, the same debris that injured her. Third, the facts are different; in *Chanthasalo,* the parties were on the side of the road waiting for police and assessing damage; here, Plaintiff was, about a minute after the accident, trying to render aid to the driver of the other vehicle. And fourth, the duty to drive in a reasonable manner encompasses the risk that debris from an accident could cause injury to a victim of that accident under these circumstances. For all these reasons, *Chanthasalo* does not warrant summary judgment for Defendants.

11

Similarly, in *Barr v. Jacobson*, 34, 975 (La. App. 2 Cir. 9/28/01); 795 So. 2d 1244, plaintiff was involved in a car accident. *Id.* at 1245. She checked on the occupants of the other vehicle and returned to her vehicle to see if anyone had used a cell phone to report the accident. *Id.* at 1245–46. After confirming that the authorities were contacted, she went back to the other car a second time, and, in the process, "stepped into a hole near the ditch and injured her ankle." *Id.* at 1246. The Louisiana Second Circuit stated that the "critical question" was: "Was the defendants' duty to use reasonable care in the operation and control of their vehicles, designed to protect a passenger in one of the involved vehicles from stepping in a hole off of the roadway and injuring herself as she walked a second time to observe the other vehicle involved?" *Id.* at 1246–47. In finding no legal causation, the court noted that (1) when she began her second trip to the other vehicle, Plaintiff "had seen that the occupants of the vehicle were being tended to by adults already on the scene"; (2) Plaintiff said she went back to the other vehicle a second time "either to watch the adults on the scene give aid, or to just observe the car because she was curious and had 'never been in a wreck before' "; and (3) Plaintiff was injured "six or seven minutes" after the accident. *Id.* at 1247. The appellate court concluded:

> We find that the danger of stepping into holes located off of the roadway while embarking on a second trip to observe other vehicles or persons involved, out of curiosity or personal interest, six or seven minutes after the accident, is simply not within the scope of this duty. This instance of curious on-looking does not fall within the scope of the risk of an automobile accident; [plaintiff] has not shown that her second trip to the stranded car was anything other than a matter of personal interest.

*Id.* at 1247. Based on this, the Second Circuit affirmed the granting of summary judgment.

The differences between the instant case and *Barr* are clear. Again, there is a distinction with respect to time (six or seven minutes in *Barr* versus "probably a minute" here). Further, here, Plaintiff was on her first trip to Ekugbere's car, not out of "personal interest," but to render

12

aid. Lastly, in *Barr*, plaintiff was injured by tripping on a hole in the ground; in this case, Plaintiff injured herself when debris from the first accident struck her. Quite simply, there is a greater ease of association between Tredick's injuries and Defendant's conduct in this case than between the *Barr* plaintiff's ankle injury and its defendant.

*Chanthasalo* and *Barr* also provide an additional reason for denying Defendants' motion; both cases distinguish a third case, *Minvielle v. Lewis*, 610 So. 2d 942 (La. App. 1 Cir. 1992), which this Court finds persuasive. In *Minvielle*, plaintiff was a passenger in a vehicle driven by Bruce Kincaid in the left lane going westward on I-10 "when a vehicle, driven by defendant . . . in the opposite direction crossed the I-10 median striking the Kincaid vehicle." *Id.* at 944. After the accident, Kincaid slowed his vehicle, crossed to the right-hand lane, and stopped on the paved shoulder on the right side about a half a mile from the point of collision. *Id.* Plaintiff and Kincaid exited the vehicle, inspected their vehicle, and then began walking on the paved part of the right shoulder back to the point of collision. *Id.* While walking, Plaintiff stepped on a deteriorated part of the shoulder and injured his left ankle. *Id.* Defendant claimed that the accident was caused by the shoulder, not his ankle. *Id.* In rejecting defendant's argument, the First Circuit stated:

> To be actionable, the cause need not be the sole cause, but it must be a cause in fact, and to be a cause in fact it must have a proximate relation to the harm which occurs and it must be substantial in character. *Dixie Drive It Yourself Systems v. American Beverage Company*, 137 So.2d 298 (La. 1962); *Miller Car Washes, Inc. v. Crowe*, 245 So. 2d 485 (La. App. 2d Cir. 1971). In determining liability, the governing criteria is whether the person creating the danger could or should reasonably have foreseen that the accident might occur. If such was the case, then he is liable notwithstanding an intervening cause. *Miller Car Washes, Inc. v. Crowe, supra*. The action of the plaintiff in proceeding from the car in which he was riding back to the scene of the accident to see who and what was involved in the accident would be a reasonably foreseeable activity involved in the occurrence of an automobile accident on an interstate highway. This Court is of the opinion that the striking of the Kincaid vehicle by defendant Lewis' vehicle was a proximate cause without

13

> which plaintiff's accident would not have happened. Likewise, the highway deterioration is also a proximate cause without which plaintiff's accident would not have happened.

*Id.* at 944–45. The court then apportioned fault between plaintiff, defendant, and the state. *Id.*

*Barr* distinguished *Minvielle* on the grounds that: "after a close reading of the *Minvielle* case, it appears that the court found liability utilizing a cause in fact or 'but for' analysis. The court did not clearly address legal causation, and undertook neither an 'ease of association' nor a 'scope of the duty' analysis." *Barr*, 795 So. 2d at 1247. But, as the dissent in *Barr* correctly asserted, the majority's reading of *Minvielle* was "narrow," as the "First Circuit clearly found that the action of the plaintiff in getting out of the car in which he was riding to go back to the scene of the accident was a reasonably foreseeable activity involved in the occurrence of an automobile accident on an interstate highway. As noted above, foreseeability is but one aspect of a determination of legal cause." *Id.* at 1248 (Brown, J., dissenting).

This Court recognizes that *Minvielle* does not definitively mean that the Plaintiff is entitled to recover. Rather, what *Minvielle* demonstrates is that reasonable minds could differ on these issues and that the central questions in this case are best left in the hands of a jury. For these reasons, Defendants' motion for summary judgment is denied.

### B. Plaintiff's Motion for Summary Judgment

It is unclear from Plaintiff's cross-motion whether she just seeks denial of Defendants' motion or asks for a conclusive finding with respect to the intervening/superseding cause issue. Defendants' briefing focuses on the latter and largely re-urges what was argued in their motion.

Either way, Plaintiff's motion should be denied. A reasonable jury could find from McCurnin's testimony that Ekugbere was not responsible for Plaintiff's injuries. Given the genuine issues of material fact, this case must be decided by a jury.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that *Defendants' Motion for Summary Judgment* (Doc. 18) filed by Bazunu D. Ekugbere and Farm Bureau General Insurance Company of Michigan and the *Plaintiffs Motion for Summary Judgment* (Doc. 19) filed by Plaintiff Heather Tredick are **DENIED.**

Signed in Baton Rouge, Louisiana, on <u>October 29, 2018</u>.

_____
**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**